FARMERS' LOAN & TRUST CO. v. WATERBURY et al.

(Circuit Court of Appeals, Second Circuit. December 15, 1911.)

No. 58.

STREET RAILROADS (§ 54*)—MORTGAGES—CONSTRUCTION.

A mortgage given by a street railroad company, not upon all of its present and future property, but upon specific property described, including the leasehold interest in leased lines, construed, and *held* not to cover sums due the mortgagor for advances made to lessor companies, nor a lease made by the mortgagor of its lines to another company so as to entitle the mortgagee to the reversion of such lease.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 54.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Farmers' Loan & Trust Company, as trustee, against the Metropolitan Street Railway Company, Pennsylvania Steel Company, John I. Waterbury, and others, as a committee, Adrain H. Joline and Douglas Robinson, receivers, and William W. Ladd, receiver. Appeal from supplemental decree of sale. Modified.

See, also, Morton Trust Co. v. Metropolitan St. Ry. Co., 179 Fed. 1010.

Simpson, Thacher & Bartlett (Graham Sumner, of counsel), for appellant.

Bronson Winthrop and Charles T. Payne, for appellee.

Masten & Nichols (William M. Chadbourne, Arthur H. Masten, and Ellis W. Leavenworth, of counsel), for receivers.

Before COXE and WARD, Circuit Judges, and HOUGH, District Judge.

WARD, Circuit Judge. The mortgage of the Metropolitan Street Railway Company to the Morton Trust Company, dated March 21, 1902, being foreclosed in this action, recites that the Metropolitan Company is (1) the owner of certain street railroads; (2) in possession of and operating certain other street railroads either as lessee or under contracts; (3) the owner of certain described real estate; and (4) of certain shares of stock pledged under a prior mortgage to the Guaranty Trust Company, dated February 1, 1897. Then it grants "all and singular the railroads, railroad routes, estates, leaseholds, properties, rights, privileges and franchises described as follows."

It will be noticed at the outset that the Metropolitan Company does not mortgage all its real estate and personal property, but only certain described property which fairly falls under the previously recited categories; all (except the real estate and shares of stock) being railroads.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The final dragnet clause, though very elaborate, is appropriate as appurtenant to the property mentioned in the above recitals and generally speaking to property then owned. Is as follows:

"Together with all and singular the improvements on said properties, and all and singular the railroads, lands, buildings, structures, fixtures, privileges, franchises, rights of way, trackage rights, *contracts*, consents, leaseholds, easements *and other rights and interests* now owned by the Railroad Company; also all and singular the tracks, side tracks or sidings, switches, rails, bridges, fences, buildings, depots, station houses, power houses, car houses, machine shops, repair shops and other shops, and all other buildings, improvements, erections and structures, and all dynamos, belting, engines, boilers, regulators, meters, poles, trolleys, conduits, feeders, cables, wires, switchboards, lamps and machinery for producing, generating and distributing electricity or power; and also all and singular the rolling stock, equipment, motors, engines, tenders, carriages, cars, trucks, horses, harness, tools, implements, furniture, fixtures, machinery, materials, coal, wood, oil, fuel and other supplies; and also all maps, drawings, profiles, licenses, records, deeds, *contracts and agreements*, patents and patented inventions and processes now owned by the Railway Company, all of which personal property is hereby declared to be fixtures and appurtenances of said railroads; *and also all present or future improvements and additions made or to be made upon and to any or all of said railroads or property, real and personal,* and any and all equipment therefor and renewals or replacements of the same or of any part thereof or the appurtenances; and also all and every other railroad, which the Railway Company shall hereafter acquire or construct by means of the proceeds of any of the bonds hereby secured, and all powerhouses, real estate, equipment and other property, real or personal, appurtenant thereto.

"And all and singular the tolls, fares, rents, issues, earnings, income, profits and other benefits and advantages of, or in any wise growing out of, all or any of the said several railroads, franchises and property, and all and singular the tenements, hereditaments and appurtenances to any of the said railroads or property belonging, or in any wise appertaining, and the reversion or reversions, remainder or remainders thereof, and all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well at law as in equity, of the Railway Company, in and to the same and every part and parcel thereof with the appurtenances."

The words underscored are relied upon to bring within the mortgage claims of the Metropolitan Company against leased lines for advances and also for rent due from and claims against the New York City Railway Company and all other personal property except shares of stock and cash on hand. But we think that these underscored words are to be read as ejusdem generis with the accompanying words, and that they all refer to property then existing and renewals thereof directly connected with the physical operation of the railroad. The mortgage is not upon all the present and future property of the company, but upon specific property.

As confirming this construction we may refer to the fact that claims against lessor companies existing at the date of the lease to the New York City Company, February 14, 1902, were assigned by that lease to the New York City Company. It is true that by virtue of an option that company took refunding bonds in place of these claims, which thus became free of the lease, but did not for that reason become subject to the lien of the mortgage of March 21, 1902; also to the fact that certain shares of stock were specifically mentioned as covered by the mortgage; and finally to the fact that not only is the word "lease"

not mentioned in the granting clauses, but the mortgage is made expressly subject to the lease to the New York City Company.

It is said that our decision upon the mortgage of the Metropolitan Company to the Guaranty Trust Company of February 1, 1897 (177 Fed. 925, 101 C. C. A. 205), requires us to construe this mortgage more liberally. But the terms of the guaranty mortgage were large, certainly as to property then owned by it. It granted:

"All and singular its property and franchises of every nature, and description whatsoever, including all its lines, buildings and real estate in the city of New York and all its railroads, railroad properties and railroad routes now constructed and in operation, etc."

The grant of property to be acquired in the future was confined to the railroads then in operation. But we were speaking of certain traffic agreements and equipments which did belong to those roads. Moreover, we inserted in the decree (subdivision 3, art. 7) a provision which reserved the distribution of the balance of the proceeds of sale after payment of costs and receivers' certificates until the final accounting.

It is further contended that the mortgage is really a mortgage of the reversion of the lease to the New York City Company, and that the Trust Company became thereby entitled to the lessor's rights and claims of all kinds. However, if we are right in our construction of the mortgage, it does not cover the lease, nor all the property leased, but only a specified portion, and therefore it is not a mortgage of the reversion.

We think the language of the supplemental decree of sale of November 2, 1910, enlarges the scope of the mortgage in respect to the property mentioned in subdivisions 1, 2, 3, 4, and 5 of lot 13, which should be stricken out, and the dragnet clause of the mortgage should be substituted for subdivision 6 of lot 12 in the original decree of May 31, 1910; and the cause is remanded to the Circuit Court, which is instructed so to modify the supplemental decree and to make any other amendments which it thinks necessary to make it conform to this opinion.